462 November 27, 2024 No. 853

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBIN AVERY HETHORN,
*Defendant-Appellant.*

Polk County Circuit Court
22CR55145, 22CR54749; A180852 (Control), A180854

Rafael A. Caso, Judge.

Submitted September 5, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah De La Cruz, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

In Case No. 22CR55145, affirmed; in Case No. 22CR54749, reversed.

**EGAN, J.**

In this consolidated appeal, defendant challenges his conviction in Case No. 22CR54749 for second-degree failure to appear, ORS 162.195(1)(a). Defendant has also appealed from the judgment of conviction in Case No. 22CR55145, but, as he has not assigned error to any ruling in that case, we affirm that judgment. Defendant did not move for judgment of acquittal on the failure to appear charge, but he asks that we review as plain error his claim that the state failed to adduce sufficient evidence that his release agreement unambiguously required him to *personally* appear for the hearing that he did not attend. Having reviewed the record, we agree that the error is plain. Further, we exercise our discretion to address the plain error because of its gravity and in the interests of justice. Accordingly, we reverse defendant's conviction for second-degree failure to appear.

The failure to appear statute provides, as relevant here, that a person commits the crime of second-degree failure to appear if the person knowingly fails to appear after being released "under a release agreement * * * upon the condition that the person will subsequently appear personally in connection with" a misdemeanor charge. ORS 162.195(1).

The evidence at the bench trial, viewed in the light most favorable to the state, is that defendant signed a release agreement in a case that is not the subject of this appeal. The release agreement included a provision in which he agreed "to personally appear" for his next court date, which was noted in the release agreement as October 5, 2022. (Uppercase omitted.) The release agreement also included provisions in which defendant agreed "that [he] shall appear at all times and places as ordered by the Court," that he would appear for trial, and that, if convicted, he would appear for sentencing. Defendant personally appeared at the specified hearing on October 5, and at the next hearing on October 19. For the subsequent hearing, on November 2, however, defendant did not personally appear. That day, he was charged with failure to appear and a warrant was issued for his arrest.

On that evidence, the court found defendant guilty of failure to appear committed on November 2, and it entered a conviction for that offense.

On appeal, defendant argues that the trial court should have, *sua sponte*, entered a judgment of acquittal on the failure to appear charge because there was no evidence that he was required to *personally* appear for the November 2 hearing. The release agreement provided only that he had to "appear," which, defendant argues, was at least ambiguous as to whether defendant could appear by counsel.

The state argues that the error is not plain because it is not obvious or beyond dispute that the state's evidence was legally insufficient. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) (plain error must be error of law; obvious—beyond reasonable dispute; and it must appear on the face of the record).

We disagree. Case law establishes that, to prove that a person has failed to appear within the meaning of ORS 162.195(1), the state is required to prove that the person was subject to a release agreement that *unambiguously* required personal appearance. *See State v. Lobue*, 300 Or App 340, 345-46, 453 P3d 929 (2019) (holding that first-degree failure to appear provision "must be interpreted to attach a criminal penalty to a knowing failure to appear" only if "the release agreement unambiguously requires personal appearance"). And, as explained in *Lobue*, Oregon's statutory scheme permits appearance through counsel, even in felony cases. 300 Or App at 345. Thus, requiring a defendant to "appear" is not the same as requiring a defendant to personally appear. The release agreement here cannot, by itself, be construed to unambiguously require defendant to personally appear for *all* future court dates.

We assume without deciding that, in addition to requiring defendant to appear personally at the October 5 hearing, the release agreement unambiguously required defendant to personally appear at future hearings "as ordered by the court"; that is, when a court directed him to personally appear at a given hearing. That appears to be the theory that the state relied on below. In closing, the

state argued that the release agreement ordered defendant "to personally appear in court as the court would order." Defendant personally appeared on October 5 and 19, "and then he didn't appear, and a warrant was issued for his arrest for failing to appear." Thus, the state concluded, "Defendant knew he should appear [on November 2], and he did not personally appear."

The difficulty for the state, however, is that construing the release agreement that way—as an order to appear personally in accordance with future court orders—means that the state had to adduce proof that defendant had been ordered by a court to *personally* appear at the subsequent hearing. The state adduced no such evidence in this case. Rather, as the state summarized in closing argument, its evidence showed that defendant personally attended the hearing listed in the release agreement, on October 5, and the next hearing, on October 19; at the October 19 hearing, the date of the next hearing—November 2—was set; defendant did not personally attend the November 2 hearing, and a warrant was issued for his arrest. There was no evidence, however, that defendant had been ordered by the court to personally appear at the November 2 hearing. Thus, it is beyond dispute that the record lacked any evidence that defendant failed to comply with an unambiguous requirement in his release agreement that he personally appear at the November 2 hearing "as ordered by the court."

In sum, the record is devoid of any evidence that the release agreement, either by its text or indirectly through a later "order[] by the court" unambiguously required defendant to appear at the November 2 hearing. ORS 162.195(1). It is thus beyond reasonable dispute that the trial court erred by failing to *sua sponte* grant a judgment of acquittal on the evidence in the record.

We exercise our discretion to correct that error based on its gravity and the ends of justice. We do not believe that doing so would undermine the policies underlying the preservation rule because defendant had no apparent strategic reason for failing to make this particular argument. *See State v. Gayman*, 312 Or App 193, 203, 492 P3d 130 (2021) (exercising discretion to correct failure to *sua sponte*

grant MJOA due to the gravity of the error, in the interests of justice, and noting that "exercising our discretion would not undermine the policies underlying the preservation rule in favor of full development of the record, as we see no strategic reason for [the defendant's] failure to make the argument below"). Further, it does not appear that this is the kind of case where the state likely could have remedied the deficiency in the evidence had defendant made the argument he makes on appeal, and had the trial court reopened the record for the state to present further evidence. *See, e.g.*, *State v. Matheson*, 220 Or App 397, 409, 186 P3d 309 (2008) (addressing as plain error sufficiency of evidence where, among other things, victim's testimony made it unlikely that, had the state been able to reopen the record, it could have elicited additional evidence to remedy the deficiency). We therefore reverse defendant's conviction for failure to appear.

In Case No. 22CR55145, affirmed; in Case No. 22CR54749, reversed.